UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 OCT 14  AM 9: 06

CLERK

BY_____
DEPUTY CLERK

APRIL L. WHITHAM, as Trustee of the )
Mary Lucile Whitham Revocable Trust, )
and APRIL L. WHITHAM, individually, )
    Plaintiffs )
                         )
           v.                   )
                         )
LAKESIDE PHARMACY HOLDINGS, INC., )
LP, INC. f/k/a LAKESIDE PHARMACY, )
INC., EARL W. PEASE, LISA PEASE, )
and CRYSTAL E. WYATT, )
    Defendants )

Case No. 2:20-CV-162

## VERIFIED COMPLAINT

Plaintiffs April L. Whitham, as Trustee of the Mary Lucile Whitham Revocable Trust

("Trust"), and April L. Whitham individually ("April") (together, "Plaintiffs"), by their attorneys

Gravel & Shea PC, complain against LP, Inc., formerly known as Lakeside Pharmacy, Inc.

("Pharmacy"), Lakeside Pharmacy Holdings, Inc. ("Holdings"), Earl W. Pease ("Earl"), Lisa

Pease ("Lisa"), and Crystal E. Wyatt ("Crystal") (altogether, "Defendants"), and allege as

follows:

### Nature of Action

1.     This is a shareholder action arising from Defendants' self-dealing; conversion of

Plaintiffs' distributions, dividends, and share certificates; breaching of a shareholder agreement;

tortious interference with that agreement; and withholding of corporate records.

2.     Plaintiffs seek an immediate hearing and access to all corporate records. Plaintiffs

also seek dissolution of Pharmacy and Holdings and other legal and equitable relief.

gravel &
  shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

## Parties and Other Persons

3.     Mary Lucile Whitham ("Lucile") was married to Clifford Whitham, Jr. ("Clifford").
They had several children together, including April, Lisa, and Crystal.

4.     Earl is married to Lisa.

5.     Clifford passed away on April 11, 2008.

6.     The Trust was executed on April 9, 2010 and amended on April 14, 2015 and
October 6, 2015.  It is organized under the laws of New York and has its principal place of
administration in Colorado.  Lucile was Grantor to the Trust.  April and Lucile were initially Co-
Trustees.  April later became, and now remains, the sole Trustee.  The Trust is a minority
shareholder of Holdings and Pharmacy, owning 24 ½ percent of each company's stock.

7.     Lucile passed away on October 16, 2018.

8.     Pharmacy is a corporation organized under the laws of Vermont.  Its principal
place of business is 13 Clover Drive, Essex Junction, Vermont.  At all relevant times, Earl, Lisa,
and Crystal were its Directors.  They continue to fill those roles.  At all relevant times, Earl was
President and Treasurer.  He continues to fill those roles.  At all relevant times, Lisa was the
Secretary and Registered Agent.  She continues to fill those roles.  Earl owns 51 percent of
Pharmacy's stock.  Crystal owns 24 ½ percent of its stock.  April is the equitable owner of 24 ½
percent of Pharmacy's stock pursuant to the Trust.

9.     Holdings is a corporation organized under the laws of Vermont.  Its principal
place of business is 13 Clover Drive, Essex Junction, Vermont.  At all relevant times, Earl, Lisa,
and Crystal were its Directors.  They continue to fill those roles.  At all relevant times, Earl was
Holdings' President, Treasurer, and Registered Agent.  He continues to fill those roles.  At all
relevant times, Lisa was its Secretary.  She continues to fill that role.  Earl owns 51 percent of



gravel &
shea |ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Fost Office Box 369
Burlington, Vermont 05462-0369

- 2 -

Holdings' stock. Crystal owns 24 ½ percent of Holdings' shares. April is the equitable owner of 24 ½ percent of Holdings' shares, pursuant to the Trust and the Lakeside Pharmacy Holdings, Inc. Stockholders' Agreement, dated November 9, 1999 ("Shareholders' Agreement").

10.     April is a citizen and domiciliary of Colorado. As noted, she is the Trust's sole Trustee. April is a minority equitable shareholder of Holdings and Pharmacy, owning 24 ½ percent of each company's stock.[1]

11.     Earl is a citizen and domiciliary of Vermont. Earl is the President, Treasurer, Registered Agent, Director, and majority shareholder of Holdings, of which he owns 51 percent of the stock. Earl is the President, Treasurer, Director, and the majority shareholder of Pharmacy, of which he owns 51 percent of the shares.

12.     Lisa is a citizen and domiciliary of Vermont. She is the Secretary and a Director of Holdings. She also is the Secretary, Registered Agent, and Director of Pharmacy.

13.     Crystal is a citizen and domiciliary of Florida. She is a Director and minority shareholder of Holdings, of which she owns 24 ½ percent of the stock. She also is a Director and minority shareholder of Pharmacy, of which she owns 24 ½ percent of the stock.

## Jurisdiction

14.     This Court has jurisdiction under 28 U.S.C. §§ 1332(a) and 1332(c) because the amount in controversy exceeds $75,000, and because no Plaintiff is a citizen of any state in which a Defendant is also a citizen.

---

[1] The Share certificates in Holdings and Pharmacy have remained in the Trust's name because Defendants have refused to reissue valid share certificates in April's name. However, the Shares passed to April per the terms of the Trust upon Lucile's death in October 2018. As such, April now has equitable ownership of the Shares and the Trust has legal ownership of the Shares. In an attempt to thwart this lawsuit, Defendants told Plaintiffs on October 12, 2020 that they have issued new certificates but neither Plaintiff has received them.



gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

## Factual Background

*The Shares*

15.     Pharmacy incorporated in 1981. At that time, Clifford owned 24 ½ percent of those shares, Crystal owned 24 ½ percent, and Earl owned the remaining 51 percent.

16.     Holdings incorporated in 1999. At that time, Clifford owned 24 ½ percent of Holdings' shares, Crystal owned 24 ½ percent of the shares, and Earl owned the other 51 percent.

17.     In sum, Clifford owned 24 ½ percent of Pharmacy (the "Pharmacy Shares") and 24 ½ percent of Holdings (the "Holdings Shares") (altogether, the "Shares"). As such, he was entitled to 24 ½ percent of the distributions from Holdings and Pharmacy when any such distributions were issued.

18.     The Shares passed to Lucile when Clifford died in 2008. All of Clifford's rights and entitlements passed to Lucile.

19.     Lucile later transferred the Shares into the Trust. All of Clifford's rights and entitlements passed to the Trust.

20.     The Trust states that the Shares were to pass to April upon Lucile's death.

21.     Under the terms of Holdings' Shareholder Agreement, Holdings was required to purchase Holdings' Shares from April thirty (30) days after Lucile's death.

22.     Lucile died on October 16, 2018, at which time the Shares transferred to April pursuant to the Trust. As such, April then became entitled to receive 24 ½ percent of the distributions from Holdings and Pharmacy when any such distributions are issued to shareholders. She also became entitled to the proceeds from the purchase of the Holdings Shares required by the Holdings Shareholders' Agreement.

23.     However, as is more particularly described below, the following events occurred:



gravel &
shea | ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 4 -

a.     Earl intentionally converted distributions owed to the Trust and engaged in self-dealing that unjustly enrich himself and uniquely harmed the Trust.

b.     After Lucile died, Earl and Crystal intentionally, knowingly, and actively refused to purchase the Holdings Shares from April, as required by the Shareholders' Agreement.

c.     Earl, Lisa, and Crystal converted April's Share certificates, and converted pro rata distributions, dividends, and other income owed to April.

d.     Earl, Lisa, and Crystal sold Pharmacy's business operations and assets (the "Sale")[2] and actively concealed the terms of the Sale from April and the Trust, converted Plaintiffs' pro rata income from the Sale, and prevented Plaintiffs from inspecting records relevant to the Sale.

e.     Defendants have intentionally and repeatedly prevented Plaintiffs from inspecting corporate documents pertaining to both Pharmacy and Holdings.

*Holdings Distributions Owing to the Trust*

24.     Between July and October 2018, Holdings and Earl intentionally, knowingly, and actively converted $735.000 per month in Holdings distributions owed to the Trust.

25.     In June 2018, Earl devised a plan to convert for his own benefit portions of Holdings distributions owed to the Trust. He personally loaned Holdings $22,908.12 at approximately 5 percent interest ("Earl's First Loan"). Earl then diverted approximately $500.00 of the Trust's monthly distribution to satisfy 100 percent of the regular payments on the loan, and

---

[2] Lakeside Pharmacy, Inc. became known as LP, Inc. after the Sale. LP, Inc. now holds Pharmacy's remaining assets. LP, Inc. remains an active Vermont corporation.



gravel &
shea | ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

he converted an additional \$235 of the dividends owed to the Trust each month for his own enrichment.

26.     Prior to Earl's First Loan, Earl did not disclose to Lucile, the Trust, or April any information about the planned loan.

27.     In June 2018, Holdings and Earl enter into Earl's First Loan. The monthly principal payment due to Earl was and remains \$438.76. The first scheduled payment was July 1, 2018. The final payment is scheduled for June 1, 2023. The interest rate owed to Earl is approximately 5 percent. Over the term of the loan, interest paid directly to Earl will exceed \$3,000.00.

28.     In accordance with the past practice of Holdings, monthly distributions to the Trust were supposed to be \$3,592.00 in July, August, September, and October 2018.

29.     However, in June 2018, Earl told Lucile that the Trust's distributions from Holdings would decrease by \$735.00 such that she would receive \$2,857.00 per month.

30.     Earl told Lucile the reduction was needed to make regular payments on the loan.

31.     Lucile reasonably relied on Earl's statements and accepted them as true.

32.     Earl knowingly failed to disclose that the loan was issued from him personally, and would be repaid to him with interest. Nor did Earl disclose that he, Crystal, and Lisa would not repay any portion of the loan or that the Trust would make 100 percent of the regular payments on the loan. He intentionally lied when he said the monthly repayment amount was \$735.00. In truth, the monthly principal was \$438.76, plus approximately 5% interest, *i.e.*, a total payment of approximately \$500.



gravel &
shea ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 6 -

33.     At Earl's direction, and with Crystal and Lisa's knowledge, consent, and active

participation, the Trust repaid 100 percent of Earl's First Loan in July, August, September, and

October 2018.  The Trust was thus shorted $2,940.00 in Holdings distributions.

34.     The Trust has repeatedly requested back-payment of those distributions but has

received no such payment.

*Pharmacy Dividends Owing to the Trust*

35.     Pharmacy's fiscal year runs from November 1 to October 31.

36.     During the fiscal year ending on October 31, 2018 (the "2018 Fiscal Year"),

Pharmacy's Board of Directors – which was comprised of Earl, Lisa, and Crystal – issued

$94,500.000 in dividends to Pharmacy's shareholders.

37.     Pharmacy's 2018 Fiscal Year shareholders were Earl, Crystal, and the Trust.

38.     As a 24 ½ percent shareholder of Pharmacy, the Trust was entitled to $23,152.50

in dividends but received no dividend payments.

39.     Earl, Lisa, and Crystal individually, intentionally, knowingly, and actively

participated in a scheme to deprive the Trust of $23,152.50 in dividends during the 2018 Fiscal

Year.

40.     The $23,152.50 in dividends were then distributed between Crystal and Earl, who

is married to Lisa, for their own enrichment and in violation of the Trust's rights as shareholder.

41.     The Trust has repeatedly requested back-payment of those funds.  However,

Pharmacy's Directors have refused to make any such payment.

gravel &
shea   ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION                                            - 7 -
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369

*Withholding April's Share Certificates*

42.     Pursuant to the Trust, Lucile's 24 ½ percent interest in both Holdings and Pharmacy passed to April when Lucile died on October 16, 2018.

43.     The Trust and April thus requested that Pharmacy and Holdings reissue the Share certificates in April's name.

44.     Earl, Lisa and Crystal agreed to do so if the Trust first submitted its Share certificates to Holdings and Pharmacy.

45.     Relying on Earl, Lisa and Crystal's promise, the Trust gave its Share certificates to Lisa and Crystal.

46.     Earl, Crystal, and Lisa then intentionally, knowingly, and actively prevented Holdings and Pharmacy from reissuing the Share certificates in April's name.

47.     Earl, Lisa and Crystal knowingly and fraudulently misrepresented to the Trust and April that they would reissue the Shares in April's name if the Trust first delivered its Share certificates to Defendants.

48.     The Trust and April have repeatedly requested that Defendants reissue the Shares in April's name, as she is the intended beneficiary of the Shares under the Trust.  However, Defendants have repeatedly refused to reissue valid shares in April's name.

49.     Earl, Lisa, and Crystal are intentionally, knowingly, and actively preventing the Shares from being reissued in April's name and are converting the Shares for their own benefit and unjust enrichment.

50.     April is entitled to the Share certificates for both Holdings and Pharmacy.



gravel &
shea  |ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 8 -

*The Holdings Shareholders' Agreement*

51.    The Holdings Shareholders' Agreement required Holdings to purchase April's Holdings Shares thirty (30) days after Lucile's death.

52.    At the time of Lucile's death, Defendants estimated those Shares' value at $384,243.26.

53.    The Holdings Shareholders' Agreement is a binding and enforceable contract between Holdings and Holdings' shareholders, who are Earl, Crystal, and April.

54.    Earl and Crystal intentionally, knowingly, and actively chose to cause Holdings not to purchase April's shares, thereby breaching the Shareholders' Agreement and depriving April of the proceeds from the required stock purchase.

55.    The Holdings Shareholders' Agreement expressly allows specific performance to force the required purchase of Shares in the event Earl and Crystal fail to do so.

56.    April is entitled to specific performance, and to the proceeds from the required sale of her Holdings Shares.

*Holdings Distributions Owing to April*

57.    Until such time as Earl and Crystal purchase April's Shares in Holdings, as is required by the Shareholders' Agreement, April is entitled to 24 ½ percent of all distributions paid to Holdings' shareholders.

58.    Holdings has made multiple distributions since April became a shareholder in October 2018. However, it has never paid April any distribution.

59.    Instead, Holdings has made partial distributions to the Trust since October 2018. After Holdings made those partial distributions to the Trust instead of April, Earl, Crystal, and Lisa have demanded that the Trust return 2/3 of those distributions directly to the Trust's


gravel &
shea | ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 9 -

beneficiaries – Lisa (1/3), Crystal (1/9), and Crystal's daughter Muffy Trimmer (2/9) – in an intentional effort to convert 2/3 of April's distribution funds for their own enrichment.

60.     The partial distributions issued to the Trust, rather than April, include the following:

> a.      Holdings distributed $2,857.00 to the Trust in November 2018. That number reflects the missing $735.00 in converted funds paid to Earl under the ruse of Earl's First Loan.

> b.      Holdings distributed $2,522.00 to the Trust in each of the following months: December 2018, and January, February, March, April, May, and June 2019. Upon information and belief, Earl continued to convert distributions under the ruse of Earl's First Loan.

> c.      Holdings withheld all distributions in July and August 2019.

> d.      Holdings distributed $2,522.00 to the Trust in September 2019. Upon information and belief, Earl continued to convert distributions under the ruse of Earl's First Loan.

> e.      Holdings withheld all distributions from October 2019 through July 2020.

> f.      In August 2020, Holdings issued a distribution check to the Trust for $12,610.00. Without proper corporate records, it is not yet clear whether Earl continued to convert distributions under the ruse of Earl's First Loan.

61.     According to Holdings' 2019 tax returns, it withheld and thereby converted $2,941.10 in additional distributions that were owed during 2019.

62.     April is entitled to $38,584.10 in Holdings distributions, $35,643.00 of which were improperly paid to the Trust, and $2,941.10 of which remain unpaid.


gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

63.     April has repeatedly requested the prior distributions, but has never received payment.

64.     April has requested her pro rata share of any 2020 Holdings distributions, but has received no such payment.

65.     Earl, Lisa, and Crystal are intentionally and actively participating in a scheme to withhold distributions from April and to ultimately deprive her of 2/3 of the distribution funds. This is self-dealing.

*The Sale*

66.     Prior to Lucile's death in 2018, Earl, Lisa, and Crystal intentionally, knowingly, and actively began negotiations with Maxwell's Pharmacy, Inc. (the "Buyer") to sell Pharmacy's business operations and certain assets held by Pharmacy.

67.     In June 2018, Earl told Lucile and April that a sale was possible and that Lucile could receive $250,000.00 from the Sale.  Earl provided no additional details.

68.     Earl, Lisa, and Crystal then intentionally, knowingly, and actively concealed details of the negotiations from Lucile, the Trust, and April.

69.     On November 3, 2018, Earl, Lisa, and Crystal intentionally, knowingly, and actively offered to sell Pharmacy's business operations and assets to the Buyer for $891,500.00, and executed a Sale Agreement to that effect.

70.     The Sale closed on or around November 16, 2018.

71.     The Trust, Lucile and April never received notice of a shareholders' meeting to decide whether to sell Pharmacy.

72.     Neither April nor the Trust received any proceeds from the Sale.



gravel &
shea | ATTORNEYS AT LAW

73.     Earl, Lisa, and Crystal intentionally, knowingly, and actively concealed and withheld April's pro rata share of the Sale proceeds.

74.     April and the Trust have repeatedly requested complete documentation of the Sale but have received scant records that do not allow them to determine the value of the Sale, the funds actually received by Pharmacy to date, the expected future proceeds of the Sale, or the amount of pro rata income owed to April from the Sale.

75.     Pharmacy, Earl, Lisa, and Crystal, have intentionally, knowingly, and actively concealed a complete accounting of Pharmacy prior to the sale, an accounting of Pharmacy's Inventory prior to the Sale, an accounting of Pharmacy's assets prior to the sale, records of Pharmacy's accounts receivable before and after the sale, an accounting of Pharmacy's costs and expenses arising from the Sale, the final Sale price, the Bill of Sale, the Seller's Note, the payment schedule, records of payments received, records of escrow funds relating to the Sale, records of mortgages relating to the Sale, the final reconciliation of transferred pharmaceuticals, and the final accounting of insurance and tax liabilities at the time of Sale.

76.     Based on the initial offer of $891,500.00, April is entitled to $218,417.50 from the Sale. However, without complete records of the Sale, April cannot accurately determine her pro rata share of the Sale proceeds.

77.     Earl, Lisa and Crystal have informed April that she is only entitled to $127,740.10, significantly less than her share of what is set forth in the contract, minus taxes paid.

78.     On information and belief, Earl, Lisa, and Crystal now intend to wind up Pharmacy, liquidate all of its remaining assets, pay themselves the proceeds from the wind up, and distribute to themselves all funds remaining from the Sale (the "Wind Up").



79.     April is entitled to a 24 ½ percent of the Sale and Wind Up proceeds but cannot determine the value of her share without access to Pharmacy's full corporate records.

*Pharmacy Dividends Owing to April*

80.     During the fiscal year that ended on October 31, 2019 ("Fiscal Year 2019"), Pharmacy's Board of Directors – which consists of Earl, Lisa, and Crystal – issued \$94,500.00 in dividends to its shareholders after the Sale. At that time, April was a 24 ½ percent shareholder and was entitled to \$23,152.50. However, April received \$0.00 in Pharmacy dividends for Fiscal Year 2019. Pharmacy's Board of Directors unlawfully deprived April of \$23,152.50 in Fiscal Year 2019 dividends. Earl, Lisa, and Crystal intentionally, knowingly, and actively participated in a scheme to convert \$23,152.50 in dividends from April in Fiscal Year 2019, and to unjustly enrich themselves by distributing April's dividend among themselves in 2019.

81.     On information and belief, Earl and Crystal have not returned to Pharmacy the \$23,152.50 dividend they personally and intentionally converted from April in 2019.

82.     In September 2020, Earl, Crystal, and Lisa caused Pharmacy to issue a \$23,152.50 check to the Trust, rather than to April, and then requested that the Trust return 2/3 of those funds to Lisa, Crystal, and Muffy Trimmer as beneficiaries under the Trust.

83.     April has repeatedly demanded back-payment of the dividends but has received no such payment.

84.     April has requested her pro rata share of any 2020 Pharmacy dividends, but has received no such payment.



gravel &
shea | ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 13 -

*Self-Dealing*

85.     As set forth above, Earl, Lisa and Crystal have engaged in a course of self-dealing by having Holdings enter into Earl's First Loan in June 2018, and by paying Holdings' distributions to the Trust rather than April.

86.     On July 16, 2019, Holdings and Earl entered into another loan ("Earl's Second Loan") in which Earl personally loaned $15,622.83 to Holdings.  The monthly principal payment is $306.42, plus approximately 6 percent interest, all of which is paid directly to Earl from funds that April has a 24 ½ interest in.

87.     On an undisclosed day in 2019, Pharmacy purportedly issued a personal loan to Crystal ("Crystal's Loan") without informing or seeking consent from April or the Trust. Pharmacy, Earl, Lisa, and Crystal have intentionally, knowingly, and actively concealed information as to the principal amount, interest rate, payment schedule, and lender.  Accordingly, April cannot determine whether any portion of Crystal's Loan has been repaid, whether Crystal and Pharmacy intend any portion to be repaid, or whether "Crystal's Loan" was actually a dividend paid directly to Crystal without also providing April her pro rata share.  Pharmacy and Crystal are intentionally, knowingly, and actively attempting to convert and deprive April's pro rata share of Pharmacy's assets.

Document Requests

88.     April and the Trust have repeatedly requested documents and information from Pharmacy and Holdings, but Defendants have consistently withheld the materials.

89.     On August 21, 2020, Plaintiffs requested the articles of incorporation and amendments to those articles for both Pharmacy and Holdings.  The request was met with silence.



gravel &
shea   ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369

90.    On June 5, 2020, April and the Trust requested the full books and records of both

Holdings and Pharmacy, including, but not limited to the following materials that Defendants

have continued to withhold:

a.    Documentation Relating to the Sale of Pharmacy

i.    The signed promissory note as to the Sale of Pharmacy;

ii.    The Small Business Administration loan agreement and any other

loan agreements, promissory notes, and/or mortgages or other

security interests signed in connection with the Sale;

iii.    Records of all payments received by Pharmacy and/or the other

shareholders in connection with the Sale, records of any Sale

payments still held in escrow, and any related escrow agreements;

iv.    Records of any payments or distributions made to other

shareholders, lenders, or others in connection with the Sale with or

from proceeds of the Sale;

v.    A payment schedule for Plaintiffs' portion of the Sale proceeds;

vi.    Any and all other books and records in connection with the Sale;

b.    Stock Records

i.    Original, official, and transferable Share certificates for Plaintiffs'

full interest in both Pharmacy and Holdings;

ii.    Replacement Pharmacy stock certificates issued to either the Trust

or April following the Sale;

iii.    The current stock ledgers and stock transfer records for both

Pharmacy and Holdings, including any stock transfer agreements



gravel &
shea  ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369

or purchase agreements, and any valuation reports or calculations connected to any transfers;

c.  Corporate Documentation and Shareholder Agreements

    i.  The bylaws of Pharmacy and Holdings, including any amendments and/or restatements thereof;

    ii.  Amendments to the articles of incorporation for Pharmacy and Holdings;

    iii.  The shareholders', stockholders' and/or stock transfer restriction agreement(s) of Pharmacy;

    iv.  Any amendments and/or restatements to the shareholders', stockholders' or stock transfer restriction agreement(s) of Pharmacy and Holdings;

    v.  All corporate meeting minutes of Pharmacy and Holdings;

    vi.  All records of director and shareholder actions taken without a director or shareholders' meeting as to both Pharmacy and Holdings;

    vii.  All motions, proposals, calculations, and adjustments related to the fair market value of Pharmacy and Holdings and of their property;

    viii.  Any appraisals of the property held by Pharmacy and Holdings that were made or issued in the last three years;

    ix.  The last three annual financial reports of Holdings, which include balance sheets and profit and loss statements;

gravel &
shea | ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 16 -

x.      Profit and loss statement for Pharmacy from fiscal year ending
        October 31, 2017; and

xi.     Dissolution records for either Company, as applicable, including,
        but not limited to, articles of dissolution accepted by the Vermont
        Secretary of State; and financial records and other records
        regarding the windup of Pharmacy and/or Holdings, and
        distribution of assets prior to dissolution, including, but not limited
        to, distribution among members of the relevant company.

91.     Defendants have failed to provide the requested materials, causing Plaintiffs to
incur additional costs and attorneys' fees.

92.     Without these materials, Plaintiffs cannot valuate the Shares, determine the terms
under which the Shares should be sold, determine the performance and financial condition of
Pharmacy and Holdings, or ascertain the scope of Earl, Lisa, and Crystal's mismanagement of
Pharmacy and Holdings.

## COUNT I
### Inspection of Records

93.     Plaintiffs incorporate the foregoing as though fully set forth herein.

94.     This is a claim made by April and the Trust against all Defendants.

95.     Pursuant to 11A V.S.A. §§ 16.02(a) and 16.02(c), Plaintiffs are entitled to inspect
and make copies of Pharmacy and Holdings' corporate records.

96.     Plaintiffs requested to inspect and copy the Pharmacy and Holdings documents
described with particularity in paragraphs 89 and 90, *supra*, of this Complaint.

97.     Plaintiffs gave Defendants ample notice of their desire to inspect the documents.

98.     Plaintiffs' requests were made in good faith and for the proper purpose of



gravel &
shea  ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 17 -

valuating their Shares, determining the terms under which the Shares should be sold, determining

the performance and financial condition of Pharmacy and Holdings, and ascertaining the scope

of Earl, Lisa, and Crystal's mismanagement of Pharmacy and Holdings.

99.     The requested records are directly connected with Plaintiffs' proper purposes

because they are reasonably relevant to those purposes.

100.     Pharmacy and Holdings have withheld the requested documents and materials.

101.     Earl, Lisa, and Crystal have intentionally and actively prevented Plaintiffs from

inspecting the requested records.

102.     Defendants' refusal to allow inspection is actionable under 11A V.S.A. § 16.04.

103.     Pursuant to 11A V.S.A. § 16.04(b), Plaintiffs respectfully request an expedited

hearing on Count I to be scheduled by the Court at its earliest convenience.  Plaintiffs will file a

motion requesting a hearing on the relief requested in Count I.

104.     Plaintiffs seek an Order from this Court requiring Defendants to produce for

inspection the records described in paragraphs 89 and 90, *supra*, of this Complaint.  Plaintiff's

also seek costs and attorneys' fees as required by 11A V.S.A. § 16.04(c).

## COUNT II
### Shareholder Oppression

105.     Plaintiffs incorporate the foregoing as though fully set forth herein.

106.     This is a shareholder oppression claim made by April and the Trust against all

Defendants, seeking judicial dissolution and appointment of a custodian and a receiver.

107.     The Trust and, later, April were 24 ½ percent shareholders in Holdings and

Pharmacy at all relevant times.  April and the Trust were repeatedly oppressed by Earl, Lisa, and


gravel &
shea  |ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369

Crystal and suffered injuries of a type and manner separate and distinct from any injury suffered by the companies or other shareholders.

108.     Earl, Lisa, and Crystal have, and continue to, intentionally, knowingly, and actively oppress Plaintiffs by illegally depriving Plaintiffs of their rightful distributions and dividends from Holdings and Pharmacy; engaging in self-dealing by demanding that 2/3 of distributions owed to April be returned to Defendants from the Trust, fraudulently retaining April's Share certificates, failing to purchase April's Shares in Holdings as required by the Shareholders' Agreement, misapplying corporate assets for their own unjust enrichment, acting in bad faith to deprive Plaintiffs of their shareholders' rights, and acting in their own pecuniary interests rather than in the companies' best interest. *See* 11A V.S.A. §§ 8.30(a), 14.30(2)(B), 14.30(2)(D).

109.     Plaintiffs request that this Court appoint a custodian *pendente lite* to oversee Pharmacy and Holdings during the course of this litigation to prevent additional shareholder oppression. *See* 11A V.S.A. §§ 14.31(c), 14.32, 20.15(b).

110.     Plaintiffs also seek judicial dissolution of Pharmacy and Holdings under 11A V.S.A. §§ 14.30(2)(B) and 14.30(2)(D), request a decree of dissolution pursuant to 11A V.S.A. § 14.33(a), and request appointment of a receiver to wind up Pharmacy and Holdings. 11A V.S.A. § 14.32(a).

## COUNT III
### Conversion of April's Share Certificates in Pharmacy and Holdings

111.     April incorporates the foregoing as though fully set forth herein.

112.     This is a direct shareholder claim by April against Earl, Lisa, and Crystal.



gravel &
shea   ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

113.    The Shares passed to April on October 16, 2018 as the intended beneficiary under the Trust.

114.    April requested that Defendants reissue the Share certificates in April's name.

115.    Earl, Lisa, and Crystal intentionally, knowingly, and actively failed to reissue valid Share certificates in April's name, thereby converting the Share certificates from April.

116.    Earl, Lisa, and Crystal have intentionally deprived April of the Shares for their own use, benefit, and unjust enrichment.

117.    As the only shareholder deprived of valid Share certificates, April was uniquely harmed in a manner separate and distinct from other shareholders and from the companies themselves.

118.    April has personally suffered harm, and requests damages, costs, pre- and post-judgment interest, and an order of this Court requiring Defendants to reissue official and valid Shares in April's name and deliver those Shares to April prior to dissolution of Pharmacy and Holdings.

## COUNT IV
### Breach of the Holdings Shareholders' Agreement

119.    April incorporate the foregoing as though fully set forth herein.

120.    This is a direct shareholder claim by April against Earl and Crystal.

121.    April has been a 24 ½ percent shareholder in Holdings since October 16, 2018.

122.    The Shareholders' Agreement is a binding and enforceable contract between Holdings, Earl, Crystal, and April.

123.    The Shareholders' Agreement required Holdings to purchase April's shares in Holdings thirty (30) days after Lucile's death in October 2018.



gravel &
shea  ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369

124.    Holdings – through the intentional, knowing, and active participation of Earl and Crystal – has refused to purchase April's shares in Holdings.

125.    Holdings' breach of the Shareholders' Agreement deprived April of the proceeds from the required stock purchase, which Defendants valued at $384,243.26 at the time of Lucile's death.

126.    As the only shareholder deprived of proceeds from the mandatory stock purchase, April was uniquely harmed in a manner separate and distinct from the other shareholders and from Holdings itself.

127.    The Shareholders' Agreement expressly allows specific performance to force the required purchase of April's Shares in the event Holdings fails to do so.  April seeks specific performance of the Shareholders' Agreement in the alternative to dissolution of Holdings.  April also seeks costs, pre- and post-judgment interest, and attorneys' fees.

## COUNT V
### Tortious Interference in the Holdings Shareholders' Agreement

128.    April incorporates the foregoing as though specifically set forth herein.

129.    This is a derivative claim made by April on behalf of Holdings against Earl, Lisa, and Crystal individually.

130.    At all times relevant to this claim, April was entitled to the Shares as the intended beneficiary under the Trust.

131.    April has repeatedly demanded that Holdings' board of directors – which consists of Earl, Lisa, and Crystal – purchase April's Shares in Holdings as required by the terms of the Shareholders' Agreement.  However, the demand has been refused repeatedly.

gravel &
shea | ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369

132.    Earl, Lisa, and Crystal have each been aware of the obligations set forth in the Holdings' Shareholders' Agreement.

133.    Earl, Lisa, and Crystal have intentionally and tortiously interfered in the performance of the Shareholders' Agreement in an effort to deprive April of the proceeds owed to her under that agreement, and to retain those funds for their own enrichment.

134.    Earl, Lisa, and Crystal's tortious conduct has unnecessarily and wastefully exposed Holdings to liability since 2018.

135.    Holdings' assets have been and will continue to be diminished as a result of the tortious conduct, unnecessarily resulting in fewer assets available to Holdings' shareholders. As such, April is derivatively harmed.

136.    April requests that, prior to dissolution, Earl, Lisa, and Crystal individually reimburse Holdings the corporate costs and fees that arose from their tortious interference in the Shareholders' Agreement.

## COUNT VI
### Conversion of Holdings Distributions Owed to April

137.    April incorporates the foregoing as though fully set forth herein.

138.    This is a direct shareholder claim by April against Earl, Lisa, and Crystal.

139.    Earl, Lisa, and Crystal are directly liable to April for common law conversion for failing to pay to her all of the distributions owed to her as a Holdings shareholder. In the alternative, Earl, Lisa, and Crystal are individually and directly liable to April for withholding distributions in bad faith, 11A V.S.A. § 8.30(a), in contravention of 11A V.S.A. § 8.33(a).

140.    April has been a 24 ½ percent shareholder in Holdings since October 16, 2018. As the only shareholder deprived of Holdings distributions from November 2018 to the present,



gravel &
shea | ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 22 -

April was uniquely harmed in a manner separate and distinct from the other shareholders and from the Holdings itself.

141.    Earl, Lisa, and Crystal were Directors of Holdings at all relevant times.

142.    Holdings' articles of incorporation establish that April, as the ultimate recipient of Clifford's Shares in Holdings, was entitled to Holdings distributions. Holdings' articles of incorporation do not allow Earl, Lisa, or Crystal to issue less than a pro rata distribution.

143.    As to both claims lodged in this Count, April seeks an Order of this Court prior to dissolution requiring the Trust to return the $35,643.00 in Holdings distributions, requiring Holdings to reissue those distributions to April individually, and requiring Holdings to distribute to April the additional $2,941.10 in unpaid distributions. April also seeks costs, pre- and post-judgment interest, and attorneys' fees.

COUNT VII
Conversion of Pharmacy Dividends Owed to April

144.    April incorporates the foregoing as though fully set forth herein.

145.    This is a direct shareholder claim by April against Earl, Lisa, and Crystal.

146.    Earl, Lisa, and Crystal are directly liable to April for common law conversion for failing to pay her all of the dividends owed to her. In the alternative, Earl, Lisa, and Crystal are directly liable to April for withholding dividends in bad faith, 11A V.S.A. § 8.30(a), in violation of 11A V.S.A. § 8.33(a).

147.    April was a 24 ½ percent shareholder in Pharmacy during Fiscal Year 2019. As the only shareholder deprived of Pharmacy dividends during Fiscal Year 2019, April was uniquely harmed in a manner separate and distinct from the other shareholders and from Pharmacy itself.



gravel &
    shea   ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

148.  Earl, Lisa, and Crystal were the Directors of Pharmacy during Fiscal Year 2019.

149.  Pharmacy's articles of incorporation establish that April, as the ultimate recipient of Clifford's Shares in Pharmacy, was entitled to Pharmacy's dividends.  Pharmacy's articles of incorporation do not allow Earl, Lisa, or Crystal to issue less than a pro rata share of dividends.

150.  As to both claims alleged in this Count, April seeks an Order from this Court prior to dissolution requiring Earl and Crystal to return to Pharmacy from their personal funds the $23,152.50 dividend they converted from April, and requiring Pharmacy to then issue to April her pro rata share of Pharmacy's Fiscal Year 2019 dividends.  April also seeks costs, pre- and post-judgment interest, and attorneys' fees.

## COUNT VIII
### Conversion of Holdings Distributions Owed to the Trust

151.  The Trust incorporates the foregoing as though fully set forth herein.

152.  This is a direct shareholder claim by the Trust against Earl.

153.  Earl is directly liable to the Trust for common law conversion for unilaterally reducing the Trust's distributions by $735 in June through October 2018.  In the alternative, Earl is directly liable to the Trust for withholding such distributions in bad faith, 11A V.S.A. § 8.30(a), in contravention of 11A V.S.A. § 8.33(a).

154.  The Trust was a 24 ½ percent shareholder in Holdings between June and October 2018.  As the only shareholder deprived of its lawful distributions in July, August, September, and October 2018, the Trust was uniquely harmed in a manner separate and distinct from other shareholders and from Holdings itself.

155.  Earl was a Director of Holdings at all relevant times.



gravel &
shea  ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

156. Holdings' articles of incorporation establish that the Trust, as the recipient of Clifford's Shares in Holdings, was entitled to Holdings distributions. Holdings' articles of incorporation do not allow Earl or any other Director to issue less than a pro rata distribution.

157. As to both claims alleged in this Count, the Trust seeks an Order from this Court prior to dissolution requiring Earl to return to Holdings from his personal funds the $2,940.00 in distributions he converted from the Trust, and requiring Holdings to then distribute to the Trust that $2,940.00 sum. The Trust also seeks costs, pre- and post-judgment interest, and attorneys' fees.

## COUNT IX
## Conversion of Pharmacy Dividends Owed to the Trust

158. The Trust incorporates the foregoing as though fully set forth herein.

159. This is a direct shareholder claim by the Trust against Earl, Lisa, and Crystal.

160. Earl, Lisa, and Crystal are directly liable to the Trust for common law conversion for converting Pharmacy dividends owed to the Trust in Fiscal Year 2018. In the alternative, Earl, Lisa, and Crystal are directly liable to the Trust for withholding dividends in bad faith, 11A V.S.A. § 8.30(a), in contravention of 11A V.S.A. § 8.33(a).

161. The Trust was a 24 ½ percent shareholder in Pharmacy during Fiscal Year 2018. As the only shareholder deprived of Pharmacy dividends during Fiscal Year 2018, the Trust was uniquely harmed in a manner that was separate and distinct from the other shareholders and from Pharmacy itself.

162. Earl, Lisa, and Crystal were Directors of Pharmacy at all times during Fiscal Year 2018.



gravel &
shea | ATTORNEYS AT LAW

163.    Pharmacy's articles of incorporation establish that the Trust, as the recipient of

Clifford's Shares in Pharmacy, was entitled to Pharmacy's dividends.  Pharmacy's articles of

incorporation do not allow Earl, Lisa, or Crystal to issue less than a pro rata dividend.

164.    As to both claims lodged in this Count, the Trust seeks an Order from this Court

prior to dissolution requiring Earl, Lisa, and Crystal to return to Pharmacy from their personal

funds the $23,152.50 in dividends they converted from the Trust, and requiring Pharmacy to then

issue the Trust's pro rata share of Pharmacy's Fiscal Year 2018 dividends.  The Trust also seeks

costs, pre- and post-judgment interest, and attorneys' fees.

## Claims for Relief

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment for Plaintiffs

against Defendants; order the immediate production of documents for inspection;  appoint a

custodian and receiver; dissolve and wind up Pharmacy and Holdings; and award Plaintiffs their

damages, costs, pre- and post-judgment interest, expenses, attorneys' fees, specific performance,

injunctive relief, exemplary damages, punitive damages, and such other and further legal and

equitable relief as the Court deems just and appropriate.

Dated:          Burlington, Vermont
                October 14, 2020

_____

Navah C. Spero, Esq.
Chase S. Whiting, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P.O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
nspero@gravelshea.com
cwhiting@gravelshea.com
For Plaintiffs



gravel &
shea    ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

<u>Verification</u>

I, April Whitham, am the sole Trustee of the Mary Lucile Whitham Revocable Trust, and a plaintiff who is also suing in her individual capacity. I verify that the assertions set forth in the above Verified Complaint are true and accurate and based on my personal knowledge.

MARY LUCILE WHITHAM REVOCABLE TRUST

By _April Whitham, Trustee_
April Whitham, Trustee

_April Whitham_
April Whitham, Individually

### AFFIRMATION FOR COVID-19 EMERGENCY FILINGS

(This supplemental form replaces the current requirement of notarization during the Judiciary's

limited public access period.)

I declare that the above statement is true and accurate to the best of my knowledge and

belief. I understand that if the above statement is false, I will be subject to the penalty of perjury

or other sanctions in the discretion of the court.

Dated: October 13, 2020

MARY LUCILE WHITHAM REVOCABLE TRUST

By _April Whitham, Trustee_
April Whitham, Trustee

_April Whitham_
April Whitham, Individually

gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

- 27 -